# UNITED STATES DISTRICT COURT
## for the
### Southern District of Texas

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

MAY 10 2011

David J. Bradley, Clerk of Court

| | |
|---|---|
| United States of America<br>v.<br>Irfan QADIR<br><br>*Defendant(s)* | )<br>)<br>) Case No. H11-533m<br>)<br>)<br>)<br>) |

W

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 10, 2011__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 United States Code, Sections 2320(a) Title 21 United States Code Sections 331(a)&333(a) | Knowingly and intentionally traffic in counterfeit pharmaceuticls drugs namely Viagra and Cialis wthout the authorization of the registered holders of the trademarks and misbranding of pharmaceutical drugs. |

This criminal complaint is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

John Valdez
Printed name and title

Sworn to before me and signed in my presence.

Date: __05/09/2011__

_____
Judge's signature

City and state: __HOUSTON, TEXAS__

STEPHEN WM. SMITH
Printed name and title

AFFIDAVIT

I, John Valdez, being duly sworn, depose and state:

1. I am a Special Agent with the Department of Homeland Security, United States Immigration and Customs Enforcement (ICE), assigned to Office of the Special Agent in Charge in Houston, Texas. I have been so employed since May 2001. I am assigned to the Commercial Fraud Investigations Group. I have received courses of instruction from ICE relative to investigative techniques and the conduct of fraud and financial investigations. I have a working knowledge relating to commercial fraud, including under-valuation, misclassification, quota/visa, and trademark/copyright violations. Prior to my current assignment with ICE, I was a Parole Officer for seven years with the Texas Department of Criminal Justice (TDCJ). In August of 1992, I received a bachelor's degree in Criminal Justice from Lamar University.

2. Your affiant and other ICE agents assigned to the Houston field office have been involved in the investigation of a Pakistani based smuggling ring dealing in counterfeit pharmaceuticals produced in China. As part of the investigation ICE agents have identified Irfan QADIR, a citizen of Pakistan who is currently illegally in the United States, as a major distributor of counterfeit pharmaceuticals operating out of the Houston, Texas area. QADIR and his co-conspirators are utilizing several different United States Postal Service P.O. Boxes as well as other physical addresses to traffic, import and distribute counterfeit pharmaceuticals from China into the United States in violation of Title 18, United States Code, Section 2320(a) and to cause the importation of misbranded

drugs in violation of Title 21, United States Code, Section 331(a) & 333(a) Pursuant to Title 21, United States Code, Section 352, a drug is "misbranded" if it fails to bear adequate directions for use.

3.  On or about November 9, 2010, ICE agents in Houston, Texas received information from Douglas Mason, a Special Agent (SA) with the United States Food and Drug Administration (FDA) regarding the seizure of mail parcel EE524734543CN. This parcel contained 720 Viagra tablets in four-count blister packs which were identified as counterfeit and 800 Cialis tablets in two-count blister packs which were also counterfeit. Viagra is a prescription drug product marketed and distributed by Pfizer Pharmaceuticals (Pfizer) and has been approved by the FDA for the treatment of erectile dysfunction. Viagra is a trademark owned by Pfizer and is registered on the principal register in the United Stated Patent and Trademark Office. Cialis is a prescription drug product marketed and distributed by Eli Lilly and Company (Lilly) and has been approved by the FDA for the treatment of erectile dysfunction. Cialis is a trademark owned by Lilly and is registered on the principal register in the United Stated Patent and Trademark Office.

4.  This parcel was intercepted by United States Customs and Border Protection (CBP) at the San Francisco International Mail Facility, San Francisco, California. The parcel was mailed from China and consigned to "Mr. SALEEM" at P.O. Box 1335 Stafford, Texas 77497. After the parcel was intercepted, an FDA investigator conducted an analysis of the sample Viagra and Cialis tablets using an Alternative Light Source (ALS) test. This test indicated the tablets were counterfeit due to their chemical composition. Samples of the Viagra tablets were also sent to the respective trademark

holders for analysis. Laboratory results received from Pfizer and Eli Lilly confirmed that the Viagra and Cialis tablets and corresponding blister packaging seized by CBP were counterfeit.

5. Through analytical research and surveillance, ICE agents were able to positively identify Mr. SALEEM and his place of residence. In November 2010, ICE agents conducted surveillance on SALEEM and observed him enter a green Dodge minivan bearing Texas plate BS7S564 with a south Asian male subsequently identified as Irfan QADIR. The vehicle is registered to Irfan QADIR. QADIR and SALEEM traveled to the United States Post Office (USPO) located at 11703 Beechnut Street, Houston, Texas. SALEEM retrieved one white mail parcel about the size of a shoe box from the postal clerk. QADIR and SALEEM then left the post office on Beechnut and traveled to a second USPO located at 4110 Bluebonnet Drive, Stafford, Texas 77477. P.O. Box 1335 is located within this USPO. SALEEM and QADIR entered the USPO together. The intercepted mail parcel at the San Francisco mail facility was addressed to this same P.O. Box. Approximately 10 minutes later QADIR was observed exiting the USPO with a white mail package approximately two inches thick, eight inches wide and ten inches long.

6. Analytical research and surveillance conducted on QADIR revealed that he lived at Tradewinds Apartments, 11303 Wilcrest Drive Houston, Texas and that he leased P.O. Box 741014, which is located within the USPO at 6500 De Moss Drive in Houston,

Texas. Agents also determined that QADIR and SALEEM live in the same apartment complex.

7. On or about April 4, 2011, ICE agents were notified regarding the seizure of mail parcel EE601160019CN by CBP at the San Francisco International Mail Facility. The mail parcel contained 2,000 tablets of counterfeit Viagra in blister packaging. CBP seized this parcel because, after inspection and investigation, the lot number 3148330210 on the Viagra blister packaging was not a valid Pfizer lot number. Additionally, the Pfizer logo on the blister packaging was printed in the wrong color, inconsistent with authentic Viagra blister packaging. Your affiant was also informed by officials with Pfizer that any Viagra blister package bearing lot number 314833021 is counterfeit. Pfizer officials also stated that lot number 314833021 has been identified in numerous counterfeit Viagra investigations. This mail parcel originated in China and was consigned to "Mr. IRFAN" at P.O. Box 741014 Houston, Texas 77274. The description of the content of the package was described as "gift". P.O. Box 74104 is assigned to and utilized by QADIR.

8. On or about April 13, 14, and 15, 2011, ICE agents attempted a controlled delivery of mail parcel EE601160019CN consigned to "Irfan" (QADIR) at his P.O. Box 741014 located within the USPO on De Moss Drive Houston, Texas 77074. On April 13, 2011, at approximately 8:30, QADIR traveled to the USPO on De Moss DR and attempted to retrieve mail parcel EE601160019CN from P.O. Box 741014. QADIR was not given the mail parcel because agents were not in position to conduct the controlled delivery. The postal clerk informed QADIR that his P.O. Box lease expired on March

31, 2011, and advised QADIR in order for him to retrieve the package from the P.O. Box he needed to renew the P.O. Box. The postal clerk advised QADIR that he would need show identification in order to renew his P.O. Box. QADIR informed the clerk that he did not have any identification on his person and would come back later in the day with identification and renew the P.O. Box and retrieve the package. SA Robert Sherman observed QADIR exiting the USPO in his green Dodge minivan bearing Texas plate BS7S564. QADIR did not return to the post office on April 13, 2011.

9. On April 14, 2011, Postal Inspector (PI) Loretta Tenowich placed a call to QADIR at telephone number 281-568-8656, and spoke to an unknown female. PI Tenowich advised the unknown female that she was with the Postal Service and needed to speak to Mr. QADIR regarding a mail parcel at the post office that needed to be picked up. The female informed PI Tenowich that QADIR was not home and provided PI Tenowich with QADIR's cellular telephone number (832-353-0991). On April 14, 2011, PI Tenowich called telephone number 832-353-0991 and spoke to QADIR. PI Tenowich advised QADIR that he had a parcel at the post office that needed to be picked up today or it would be returned to the sender. QADIR stated that he needed to renew his P.O. Box and asked PI Tenowich how much it would cost to renew the P.O. Box. PI Tenowich informed QADIR that it would cost approximately $35.00 to renew the P.O. Box. QADIR then informed PI Tenowich that he was too far from the post office to pick up the package "today", April 14, 2011. QADIR advised PI Tenowich that he would try to pick up the mail parcel in the morning on the following day. QADIR was under surveillance on April 14, 2011. When QADIR informed PI Tenowich that he was too far a way to

pick up the mail parcel he in-fact was at the AWAMI MARKAZ restaurant, approximately 4 miles away from the Post Office. On April, 13, 14, and 15, 2011, agents observed QADIR driving within several miles of the post office on several occasions, but never stopping by the post office to pick up the mail parcel containing the 2,000 tablets of counterfeit Viagra. ICE agents believe QADIR became suspicious of law enforcement when the postal clerk informed him that he needed to provide identification in order to pick up the mail parcel and renew his P.O. Box.

10. On or about May 2, 2011, ICE agents received information from a Source of Information (SOI) regarding QADIR. The SOI advised agents that he was aware that an individual known as "Irfan" was distributing Viagra and Cialis to Pakistani grocery, convenience and dollar stores. The SOI stated QADIR worked at or owned THE AWAMI MARKAZ, a restaurant and grocery located at 12365 Bissonnet, Houston, Texas. The SOI described Irfan in detail and identified him as Irfan QADIR from QADIR's Texas Driver License photo. The SOI further stated that he met with QADIR at the AWAMI MARKAZ and discussed with QADIR the sale of the "blues." The SOI stated that the term "blues" is a code word for Viagra tablets. QADIR informed the SOI that he sold Viagra and provided the SOI with his cellular telephone number so the SOI could contact him when he was ready to purchase the Viagra tablets. QADIR provided the SOI with telephone number 832-353-0991, the same cellular phone number provided to PI Tenowich by the unknown female who answered QADIR's home phone number on April 14, 2011.

11. On or about May 5, 2011, at the direction and control of your affiant, the SOI placed a consensually monitored telephone call to QADIR's cellular telephone number 832-353-0991. During the telephone conversation, the SOI asked for "Irfan" and the individual that answered the cellular telephone advised the SOI that he was speaking to "Irfan". 832-353-0991 QADIR stated he did not have any "blues." The SOI then negotiated with QADIR the purchase of counterfeit Cialis tablets in blister packaging. The Cialis tablets were referred to as "yellow." The SOI and QADIR agreed that the SOI could purchase and receive the counterfeit Cialis at The AWAMI MARKAZ restaurant.

12. At the direction and control of your affiant, the SOI traveled to the AWAMI MARKAZ restaurant and purchased counterfeit Cialis tablets in two-count blister packaging from QADIR. The meeting with QADIR was recorded. The Cialis tablets purchased from QADIR bore Batch number A05668. On May 6, 2011, your affiant was informed by officials with Eli Lilly that Batch number A05668 was a valid Batch number for authentic Cialis. Eli Lilly officials further stated that any Cialis blister package containing Batch number A05668 would be counterfeit and that Batch number A05668 has been identified in numerous counterfeit Cialis investigations.

13. On or about May 6, 2011, CBP officers at the International Mail Facility in San Francisco, California seized another mail parcel, this time with number EE614040920CN. The mail parcel contained 2,000 tablets of counterfeit Viagra tablets contained in 500, four-count blister packaging. CBP seized the parcel containing the Viagra tablets because inspection and investigation indicated that lot number 3148330210

on the Viagra blister packaging was not valid. Your affiant contacted Pfizer officials regarding the suspected counterfeit Viagra tablets and was informed the lot number was not a valid Pfizer lot number. Pfizer officials also stated that any Viagra blister package bearing lot number 314833021 would counterfeit and that this lot number had been identified in numerous counterfeit Viagra investigations. The parcel was mailed from China and cosigned to Mr. "Irsan" at address 12365 Bissonnet St, Houston, Texas 77099. This is the address for the AWAMI MARKAZ restaurant.

14. Subsequent to the seizure of the parcel containing counterfeit Viagra tablets, on May 6, 2011, agents decided to attempt to set up a controlled delivery of the parcel to QADIR. On that same day, the SOI placed a consensually monitored telephone call to QADIR. The SOI called QADIR's cellular telephone number 832-353-0991. During the telephone conversation, the SOI asked for "Irfan" and the individual that answered the cellular telephone advised the SOI that he was speaking to "Irfan", also known as QADIR. The SOI asked QADIR about the status of the "blues" which is a code for Viagra. QADIR responded to the SOI and informed him that he was expecting a shipment of "500 cards" on Monday, or Tuesday (May 9, or May 10, 2011). The term "500 cards" is code for 500, four count blister packages of Viagra. QADIR and the SOI discussed the shipment in detail and QADIR confirmed the 500 cards would consist of 2000 tablets. ICE agents believe the shipment QADIR is referring to is mail parcel EE614040920CN that was seized by CBP on or about May 6, 2011.

15. On May 10, 2011, ICE agents decided to attempt a conducted a controlled delivery of mail parcel EE64040920CN containing approximately 2,000 counterfeit Viagra tablets

to QADIR. At approximately 9:50 AM Postal Inspector Tony Tomasino acting in an undercover capacity as a mail courier, entered the AWAMI MARKAZ with above mentioned mail parcel. PI Tamasino met with a person identified as QADIR. QADIR signed for the parcel and then took custody of the parcel. PI Tamasino then left the location.

16. Later that same morning, at approximately 9:55a.m., the SOI of information placed a call to QADIR at telephone number 832-353-0991. During the telephone conversation, the SOI asked for "Irfan" and the individual that answered the cellular telephone advised the SOI that he was speaking to "Irfan". The SOI asked QADIR if he received the shipment of "blues" that he was expecting. QADIR responded, "I just received the shipment two minutes ago." QADIR then offered to sell all 2,000 tablets of counterfeit Viagra to the SOI. QADIR also advised the SOI that he had another customer who wanted to purchase all 2,000 Viagra tablets and told SOI that he would sell the Viagra to whoever arrived first.

17. At approximately 10:00a.m. ICE agents, assisted by agents with the FDA and the USPS entered the AWAMI MARKAZ and informed QADIR that he was under arrest for violations of the above charges. During a protective sweep of the store SA Corbin Wickman observed mail parcel EE64040920CN under the checkout counter. The parcel was unopened. After being informed that he was under arrest, QADIR was advised on his MIRANDA rights. QADIR was informed orally and in writing. QADIR, after being informed of his rights, signed a waiver acknowledging that he understood his rights and wished to waive those rights and answer questions. QADIR informed agents that he

knew that the package contained Viagra tablets and that he ordered the tablets through an individual residing in Pakistan. QADIR also stated that he had received approximately ten packages over a year and half time period. QADIR was asked about the parcel that had been intercepted by CBP at the San Francisco mail facility on April 4, 2011 with the address P.O. Box 741014, Houston, Texas 77274. QADIR acknowledged that he had ordered the package containing Viagra. QADIR further provided that he sold Viagra and Cialis tablets to a person later identified by agents as Saleem Khuwaja and that he would be willing to place a call to Saleem. QADIR then placed a telephone call to 832-274-8093. Saleem answered the call and during the conversation indicated he was interested in purchasing Viagra. Saleem agreed to meet with QADIR to purchase the Vigara. At approximately 12:45, agents observed Saleem meet with QADIR at which time Saleem received the entire parcel that QADIR had just received. Saleem paid QADIR approximately $1200 and indicated he would provide the remainder of the payment later that day. Saleem then exited the building and was intercepted by agents.

## Conclusion

18. Based upon your affiant's experience in conducting counterfeit pharmaceutical investigations and information received from FDA/OCI Special Agent Doug Mason and officials with Pfizer and Eli Lilly, I know that Viagra and Cialis are not manufactured in China. I am also aware that waybills and Customs declarations should correctly describe the contents of the package. The pharmaceuticals are packaged in industry manufactured boxes with corresponding literature. Invoices and packing lists detailing the exact quantity and description of the drugs are shipped with them. In the aforementioned

shipments related to QADIR, the contents are never described in the waybills as pharmaceutical drugs. The tablets are not contained in legitimate manufacturers packaging and the invoices and packing lists and fail to accurately identify the contents as drug product. Also, there is no corresponding manufacturer's literature. Additionally, the seized parcels shipped to QADIR, originated in China.

19. Based on the above facts and circumstances, your affiant believes probable cause exists that Irfan QADIR, 1) did import and distribute counterfeit pharmaceuticals from China into the United States in violation of Title 18, United States Code, Section 2320(a) and 2) cause the importation of misbranded pharmaceuticals in violation of Title 21, United States Code, Section 331(a) & 333(a).

John Valdez, Special Agent
U.S. Immigration and Customs Enforcement

Sworn to before me, and subscribed in my presence on May 9, 2011, and I find probable cause.

~~STEPHEN W. SMITH~~  Nancy Johnson
UNITED STATES MAGISTRATE JUDGE